IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

HAMPTON B. LUZAK,                       )
                                        )
                Plaintiff,              )
                                        )
v.                                      )        Civil Action No. 1:15-cv-501 (AJT/IDD)
                                        )
MERRILL B. LIGHT, *et al.*              )
                                        )
                Defendants.             )
_____ )

## AMENDED MEMORANDUM OPINION [1]

On October 24, 2013, defendant Coastal Forest Resources Company ("CFRC" or the "Company"), acting through its Board of Directors (the "Board"), approved a compensation package to Travis B. Bryant ("Bryant"), the Company's newly appointed Chief Executive Officer and member of the Board (the "Transaction"). The Transaction package included certain stock transfers and option grants. Plaintiff Hampton B. Luzak ("Ms. Luzak") is an approximately 33% shareholder in the Company, a private, closely held corporation. In this action, Ms. Luzak deriviatively challenges the Transaction as a breach of fiduciary duty on the part of those directors who approved the Transaction and also on the part of Bryant, who is not related by blood or marriage to either of the two families who own CFRC stock.

In response to Ms. Luzak's derivative action, CFRC formed a special litigation committee (the "SLC" or the "Committee") to evaluate her claims pursuant to Virginia Code § 13.1-672.4. On September 30, 2015, after extensive investigation and consideration of Ms. Luzak's derivative allegations and with the assistance of various legal and other professional advisors and consultants, the Committee concluded, as reflected in its written report (the

_____

[1] This Amended Menorandum Opinion supercedes and replaces the Memorandum Opinion dated July 7, 2016 [Doc. No. 474]

"Report"), that it was not in the best interests of the Company or its shareholders to pursue the breach of fiduciary duty claims asserted by Ms. Luzak on behalf of the Company.

Upon consideration of the record in this case, the Court concludes as a matter of law that the Company and the Committee have complied with the applicable statutory requirements— both procedural and substantive— pertaining to the investigation of a shareholder's derivative claim through a special litigation committee; and Ms. Luzak's derivative claims, which, as pleaded, include Count IX of her Second Amended Verfied Shareholder Derivative Complaint [Doc. No. 240] (the "Complaint" or "Compl."), must be dismissed pursuant to Virginia Code § 13.1-672.4 governing the dismissal of derivative claims. CFRC's Motion for Summary Judgment [Doc. No. 177] (the "Motion") will therefore be granted and this action dismissed.

## I. BACKGROUND

Unless otherwise indicated, the Court finds the following facts to be undisputed:

CFRC is a closely held Virginia corporation engaged in the business of manufacturing timber products. The Company is headquartered in Havana, Florida. The Company's corporate predecessor was founded by Victor Barringer, the grandfather of Ms. Luzak and co-defendant Merrill B. Light ("Ms. Light"), Ms. Luzak's sister. In the 1950s, Victor Barringer sold the Company to, among others, his son Paul B. Barringer, II ("Barringer"); the father of Ms. Luzak and Ms. Light. Barringer; Ms. Light; J. Randolph Light, Ms. Light's husband ("Mr. Light"); and Bryant were at all material times members of CFRC's Board of Directors.[2]

The Transaction occurred in October 2013 when the Company sold 2.5% of its nonvoting stock to Bryant, then its CEO, at a value of $4.92 per share, together with an option to purchase

---

[2] Other directors included, at various times, Robert Conger, Michael Hagler, and Stephen A. Wannall.

2

an additional 2.5% at book value at the time of exercise.[3]  The substantive core of Ms. Luzak's allegations is that the Company undervalued the stock price offered to Bryant to the detriment of the Company. *See generally id.* ¶¶ 1-23.

The Company promoted Bryant to CEO from his earlier position of Chief Financial Officer after Ms. Luzak's husband, Kevin Luzak, was terminated as CEO and removed from the Board: and the Transaction constituted part of Bryant's compensation package as Chief Executive Officer. The Company did not disclose the Transaction to Ms. Luzak at the time it was consummated; Ms. Luzak first learned of the Transaction in January 2015 after reviewing the Company's annual financial statements, which described the Transaction in a footnote. Subsequently, in early 2015, Ms. Luzak made various records requests and other shareholder demands seeking information related to the Transaction. On April 15, 2015, in response to Ms. Luzak's shareholder demands, the Company filed a declaratory judgment action against Ms. Luzak seeking a declaration, *inter alia,* that the Transaction was valid and binding and to "remove the cloud of controversy" surrounding the Company's stock ownership. [Doc. No. 1 at 1, 6]. On May 11, 2015, Ms. Luzak filed a counterclaim [Doc. No. 7] seeking to void the Transaction, which the Court deemed to be a derivative claim by Order dated August 14, 2015. *See* [Doc. No. 89].[4]

---

[3] Bryant also received a single share of voting stock, also challeneged by Ms. Luzak and considered by the SLC.

[4] Also included in Ms. Luzak's counterclaim were non-derivative breach of contract claims based on certain shareholder agreements entered into by Ms. Luzak, the Company, and the other shareholders. Thereafter, this litigation divided between (i) Ms. Luzak's individual (direct) claims for breach of contract based on those shareholder agreements; and (ii) her derivative claims for breach of fiduciary duty. By Order dated August 14, 2015 [Doc. No. 89], the parties were realigned, with Ms. Luzak's counterclaim deemed a Complaint and Ms. Luzak as the plaintiff. Thereafter, Ms. Luzak, with leave of Court, filed two amended derivative complaints

In response to Ms. Luzak's shareholder demands and derivative claims, the Company formed the SLC on May 5, 2015 to investigate those claims and determine based on that investigation whether pursuit of the derivative claims was in the best interests of the Company and its shareholders. At the time the SLC was appointed on May 5, 2015, the Board consisted of Ms. Light, Mr. Light, Bryant, and Robert Conger ("Conger"). The Committee, as initially constituted, included Conger and Mr. Light. In June 2015, the Company additionally appointed Stephen A. Wannall ("Wannall") to both the Board and the Committee. In late July 2015, Mr. Light resigned from the Committee citing Ms. Luzak's challenges to his independence, leaving Conger and Wannall as the Committee's only members.

Once appointed, the SLC conducted an investigation, aided by various law and financial accounting firms, as detailed in the Report. On September 30, 2015, the SLC issued the Report [Doc. No. 439, Ex. A] which concluded that "it is not in the best interests of the Company to pursue any of the derivative claims against any of the Company's directors who have been identified in the demand letters" and that "the Transaction was authorized and valid . . . ."

On the basis of the SLC's determinations, defendants moved to dismiss Ms. Luzak's derivative complaint pursuant to Virginia Code § 13.1-672.4. [Doc. No. 177]. On November 18, 2015, the Court held a hearing on defendants' motion to dismiss during which it converted the motion into one for summary judgment and allowed the parties to pursue additional discovery. [Doc. No. 221]. Following completion of that discovery, the parties filed supplemental briefing on the Motion. The Court held a hearing on the Motion on April 21, 2016, following which it took the matter under advisement.

---

[Doc. Nos. 180, 240]. On March 17, 2016, the Court dismissed Ms. Luzak's individual breach of contract claims with prejudice. [Doc. No. 435].

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "Specific facts" must be more than mere speculation or inferences. *Celotex*, 477 U.S. at 327; *Runnebaum v. NationsBank of Md., N.A.*, 123 F.3d 156, 164 (4th Cir. 1997) (*en banc*). The defending party must present evidence that is "significantly probative." *Celotex*, 477 U.S. at 327. In sum, "the burden on the moving party may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

5

## III. ANALYSIS

The dispositive issues in this case are whether the Company validly exercised its statutory right to form the Committee to investigate Ms. Luzak's claims for breach of fiduciary duty and whether the Committee acted properly in concluding that litigating those derivative claims was not in the best interests of the Company.  If so, the Company is entitled to have the Complaint dismissed under Virginia's Stock Corporation Act, Va. Code Ann. §§ 13.1-601 *et seq*.; if not, Ms. Luzak is entitled to assert those claims derivatively on behalf of the Company.[5]

Section 13.1-672.4 of the Virginia Stock Corporation Act provides, in pertinent part:

A) A derivative proceeding shall be dismissed by the court on motion by the corporation if one of the groups specified in subsection B . . . has:

1. Conducted a review and evaluation, adequately informed in the circumstances, of the allegations made in the demand or complaint;

2. Determined in good faith on the basis of that review and evaluation that the maintenance of the derivative proceeding is not in the best interests of the corporation; and

3. Submitted in support of the motion a short and concise statement of the reasons for its determination.

B) . . . the determination in subsection A shall be made by:

. . .

2. A majority vote of a committee consisting of two or more disinterested directors appointed by a majority vote of disinterested directors present at a meeting of the board of directors, whether or not such disinterested directors constituted a quorum.

---

[5] For this reason, the dispositive issue is not whether the Transaction was valid and in compliance with all corporate law requirements, although the SLC's consideration of those issues is centrally relevant in determining whether it acted as required for the purposes of obtaining a dismissal of Ms. Luzak's derivative claims pursuant to Virginia's derivative dismissal statute, Va. Code. Ann. § 13.1-672.4.

Under Section 13.1-672.4(D), "the plaintiff shall have the burden of proving that the requirements of subsection A have not been met . . . ." Here, there is no dispute that the Company appointed a Committee that determined that it was not in the best interest of the Company to maintain Ms. Luzak's derivative proceedings; and the Company, in effect, claims a lack of evidence to establish that a Committee of disinterested directors did not, in fact, make that determination in good faith or that any of the other requirements of the derivative claims dismissal statute have not been meet. Therefore, in order for Ms. Luzak to avoid dismissal, she is required to present facts sufficient to establish any of the following: (1) that a majority of "disinterested" directors did not appoint the SLC members; (2) that the SLC members themselves were not "disinterested"; (3) that the SLC did not conduct conduct a review and evaluation, "adequately informed in the circumstances, of the allegations made in the complaint"; (4) that the SLC did not determine that maintenance of the derivative claims was not in the best interests of the Company; (5) that the SLC's determination was not made in good faith; and (6) that the SLC did not submit a "short and concise" statement in support of its decision. The Court will consider Ms.Luzak's contentions as to each of these elements.

A.      **Formation of the SLC and the "disinterestedness" of its members**

At the time the SLC was formed, the Company's Board consisted of directors Conger, Bryant, Ms. Light, and Mr. Light. Each of those directors—except Bryant—voted to appoint the SLC members. The Court has previously considered and rejected Ms. Luzak's challenge to the SLC on the grounds that the directors who appointed the SLC and the SLC members themselves were not "disinterested." *See* Trans. of Nov. 18, 2015 Hr'g [Doc. No. 233] at 55. Specifically, the Court concluded that Ms. Luzak's factual allegations were insufficient as a matter of law to establish that the voting directors or the SLC members were not "disinterested" under Virginia

7

Code § 13.1-672.4. In that regard, Ms. Luzak failed to present any evidence, or even allege, that any member of the Board who voted for the SLC or the members appointed to the SLC were a party to the Transaction, received any financial benefits under the terms of the Transaction, or had any prohibited relationship with Bryant. *See* Va. Code. Ann. § 13.1-603 (defining "disinterested director").

Based on discovery obtained since the Court's November 2015 ruling, Ms. Luzak has raised additional challenges to the Committee members' "disinterestedness" and "independence."[6] Specifically, Ms. Luzak claims that Conger, Ms. Light and Mr. Light were not "disinterested" or "independent" because those individuals (1) engaged in transfers of Company stock to a trust as part of their estate planning and therefore had a financial interest in the SLC's determination that the stock transferred via the Transaction had a low value, or at least a value only marginally higher than what those individuals claimed in connection with their estate planning stock transfers; (2) authorized as directors the filing of the declaratory judgment action against Ms. Luzak; and (3) faced personal liability for their role in approving the Transaction. Ms. Luzak also claims that the Lights had an interest in the Committee's finding that Barringer, one of the directors that approved the Transaction and who tranfered his voting stock to Ms. Light,[7] was not mentally competent in 2012 and that Conger was "beholden" to Ms. Light "for liquidity of his CFRC holdings and his Board position." *See* [Doc. No. 461 at 9-13].

---

[6] The Court has previously considered and rejected Ms. Luzk's contentions that there is a separate obligation of "independence" separate and apart from "disinterestedness." *See* Trans. of Nov. 18, 2015 Hr'g [Doc. No. 233] at 53.

[7] Ms. Luzak previously challenged the propriety of this transfer under the terms of the relevant shareholder agreements, which the Court dismissed. *See supra* n.3.

First, it is undisputed that none of these individuals directly benefitted financially from the Transaction. Nevertheless, Ms. Luzak claims that Conger and the Lights were not disinterested because a low stock valuation by the SLC would benefit them in connection with the tax ramifications of their transferring Company stock to trusts as part of their estate planning. How the SLC's determination would benefit Conger and the Lights is not at all clear, as Ms. Luzak does not claim that any such evaluation would be binding on or even considered by any taxing authority. Ms. Luzak's theory of disqualification appears to be one of first impression under Virginia law, and the Court has not found, nor have the parties cited, a case in any other jurisdiction that has considered a similar claim. In any event, based on the statutory language and legislative purpose evidenced in the structure and text of the Virginia Stock Corporation Act, the Court concludes that any such indirect financial "benefits" are simply too tangential, attenuated, speculative and uncertain for the Court to hold that they constitute "a financial interest in a matter that is the subject of such [Committee] action" for the purposes of Section 13.1-672.4.

Second, Ms. Luzak claims that Conger and the Lights are not disinterested due to their membership on the Board that approved the Transaction and authorized the filing of the declaratory judgment action against her. The Court concludes, however, that this claim is foreclosed by Virginia Code § 13.1-603, which specifically states that neither approving a transaction being challenged nor being named a defendant in the underlying action "shall [ ] by itself prevent a person from being a disinterested director." As to these directors, Ms. Luzak argues that there are facts and considerations beyond the directors' mere approval of the Transaction or status as named defendants that make them not disinterested, but the Court concludes as a matter of law that Ms. Luzak has not presented any facts beyond the challenged

9

directors' votes that would cause those votes to lose the protection conferred under Section 13.1-603. For the same reasons, the Court finds insufficient as a matter of law Ms. Luzak's claim that the SLC members and those who appointed them were not disinterested because as a result of their votes approving the Transaction, they all faced personal liability for the conduct to be evaluated by the SLC.

The Court must also reject Ms. Luzak's claim that the SLC could not, as constituted, validly consider her derivative claims because an issue before the SLC was the mental competency of Barringer, who approved the Transaction. Ms. Luzak's contention in this regard is that, because Barringer had made a stock transfer to Ms. Light around the same time as the Transaction (which Ms. Luzak had challenged in her breach of contract claims), the Lights had a financial interest in an issue—the mental competency of Ms. Light's father—that disqualified the Lights from voting for the SLC members. But even if the Lights were disqualified from voting for the SLC members, Conger remained qualified to vote for the SLC members, and the SLC would nevertheless have been appointed by the required "majority vote of disinterested directors present at a meeting of the board of directors, whether or not such disinterested directors constitute[s] a quorum," even though that "majority" consisted only of Conger. *See* Va. Code Ann. § 13.1-672.4(B)(2).

Finally, the Court rejects Ms. Luzak's claim that Conger was not disinterested because he was "beholden" to the Lights. Even were such a claim a valid basis upon which to challenge the disinterestedness of a director, Ms. Luzak has not presented facts sufficient for the Court to conclude that the relationship between Conger and the Lights, whether professional or personal, precluded Conger from acting as a disinterested director. For these reasons, the Court finds and concludes that the formation and composition of the Committee were valid under Virginia law.

10

### B.   Whether the SLC was "adequately informed"

Ms. Luzak additionally claims that the SLC was not "adequately informed" for the purposes of Virginia's derivative dismissal statute because it failed to obtain "all relevant facts and sources of information" as a part of its investigation, including specifically Barringer's medical records and the professional opinions of his treating physician in connection with its consideration of his mental competency during the period surrounding the Transaction. Ms. Luzak also claims that the SLC did not properly consider (1) the fair market value of the Company's stock transferred to Bryant; (2) an e-mail authored by Bryant which Ms. Luzak claims evidenced Bryant's willingness to accept a compensation package more favorable to the Company than that ultimately approved in the Transaction; or (3) the procedural validity of the Transaction. *See* [Doc. No. 461 at 16-28].

With respect to the scope of inquiry required of the SLC, the Court has on two occasions considered and rejected Ms. Luzak's interpretation of the obligation to be "adequately informed" under Virginia Code § 13.1-672.4(A)(1): first, during the November 18, 2015 hearing on defendants' motion to dismiss, *see* [Doc. No. 233 at 58]; and again in overruling Ms. Luzak's objections to Magistrate Judge Davis' March 11, 2016 discovery order [Doc. No. 454]. Briefly summarized, the Court concluded that the Virginia Code's requirement that the Committee be "adequately informed in the circumstances, of the allegations made in the demand or Complaint," as imposed in Section 13.1-672.4(A)(1), is a statutory mandate to understand the specific nature of and alleged factual basis for a shareholder's allegations, rather than, as Ms. Luzak contends, to conduct a particular level of substantive inquiry or analysis into the merits of those allegations. Rather, the Court finds that the Committee's obligation to investigate, consider and analyze the merits of the derivative claims is embodied in and defined by the "good

11

faith" requirement set forth in Section 13.1-672.4(A)(2), although the obligation to understand the nature of the allegations is part and parcel of a "good faith" consideration of the merits of those allegations.

The overriding statutory purpose for the SLC's appointment of the Committee was to determine whether litigating certain derivative claims was in the best interests of the corporation. The merits of a shareholder's allegations are undoubtedly a central consideration, but that determination is also driven by a wide range of other considerations, such as the extent of conflicting or competing evidence, the cost of litigation and other financial consequences that litigation may impose on the company, the retention of valuable employees, officers or directors who may decide to leave the company were litigation instituted, the recruitment of qualified employees while litigation is pending, and the disruption to ongoing operations. Ms. Luzak's construction of subsection (A)(1) would impose on a special committee an inflexible obligation to exhaust all possible sources of relevant facts before reaching a conclusion as to the central issue it faces—whether to pursue derivative claims. As the Court previously concluded, such a requirement would necessarily restrict a special committee's ability to exercise its best judgment concerning how to assess what information is necessary for it to make a good faith determination concerning the ultimate issue before it: the best interests of the corporation. It would also require a scope of judicial review inconsistent with the deferential scope of review by which a committee's determination is to be judged. In any event, no matter how the SLC's obligation to understand, investigate and analyze Ms. Luzak's derivative claims is allocated as between the "adequately informed" obligation of subsection (A)(1) and the "good faith" requirement of subection (A)(2), the SLC's decision to obtain or not obtain any particular evidence is only one factor to be considered by the Court in determining whether the SLC's decision not to pursue

12

derivative claims is objectively reasonable under all the circumstances. *See WLR Foods, Inc. v. Tyson Foods, Inc.*, 65 F.3d 1172 (4th Cir. 1995); *Abella v. Universal Leaf Tobacco Co.*, 546 F. Supp. 795, 801 (E.D. Va. 1982).

Here, as the Court previously observed, Ms. Luzak does not claim that the SLC did not *understand* her allegations, claims, or what she alleged as the factual basis for those allegations and claims. *See* [Doc. No. 454 at 5] ("plaintiff does not claim that the Committee did not understand the factual contentions pertaining to the allegations in plaintiff's demand or complaint . . . [r]ather, plaintiff claims that the Committee did not analyze sufficiently the merits of plaintiff's factual contentions . . . ."). Rather, Ms. Luzak claims that the SLC failed to become "adequately informed" because it failed to marshall, consider, and properly analyze all the available evidence that pertained to certain considerations germane to those allegations.[8] As discussed in more detail below, the SLC Report makes clear that the SLC engaged in an

---

[8] Ms. Luzak urges this Court to adopt the standard of review articulated in *London v. Tyrell*, 2010 WL 877528, at *17 (Del. Ch. 2010) ("[t]o conduct a good faith investigation of reasonable scope, the SLC must investigate *all theories of recovery* asserted in the plaintiff's complaint . . . .") (emphasis added). The *London* decision is based on the standard for derivative dismissal announced by the Delaware Supreme Court in *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981). Under *Zapata*, there is a two-step inquiry to apply when reviewing a SLC's recommendation of dismissal of a shareholder action:

> The first step of the analysis is mandatory. The Court reviews the independence of SLC members and considers whether the SLC conducted a good faith investigation of reasonable scope that yielded reasonable bases supporting its conclusions. The second step of the analysis is discretionary. The Court applies *its own business judgment* to the facts to determine whether the corporation's best interests would be served by dismissing the suit. The second step is designed for situations in which the technical requirements of step one are met but the result does not appear to satisfy the spirit of the requirements.

2010 WL 877528, at *11 (emphasis added). Whatever the wisdom of the court-created *London/Zapata* standards, they adopt a level of judicial inquiry more intrusive than that embodied in Virginia's derivative claim dismissal statute, Va. Code Ann. § 13.1-672.4, and Virginia's business judgment rule, codified at Va. Code Ann. § 13.1-690.

13

objectively reasonable investigation for the purposes of determing whether to pursue breach of fiduciary duty claims raised by Ms. Luzak, and within that context, adequately understood, investigated, and considered Barringer's mental capacity, the fair market value of the the Company's stock, the e-mail authored by Bryant, and the legal adequacy of the written consents to the Transaction upon which the the Company relied for its approval.

        1.     <u>Mr. Barringer's mental capacity</u>

Ms. Luzak asserts that her derivative claims may not be properly dismissed based on the SLC decision not to pursue her claims because its consideration of Barringer's mental competency was inadequate. Specifically, Ms. Luzak claims that the Committee failed to interview or obtain the records of Barringer's treating physician.

The SLC's investigation into Barringer's mental competency at the time he approved the Transaction included interviews with certain individuals who observed his mental condition, as they perceived it, at the time he approved the Transaction. These individuals included Mr. Barringer's lawyer and others who witnessed his participation in the Transaction's approval process, including at various board meetings and in telephone conversations. Based on this information, the Committee concluded that Barringer was competent at the time he approved the Transaction. Given the views of those who observed him, the Court cannot conclude that the SLC's determination that Barringer was competent was not objectively reasonable. *See* [Doc. No. 439, Ex. A at 26] ("the Committee is struck by the consistency in the [witnesses]' recollection [that] Barringer was completely competent at the time of the October 24, 2013 meeting and his opinions were extremely influential to the board"). More important for the Court's purposes, however, is that the information obtained by the SLC established that any claim that Barringer was incompetent when he approved the Transaction would be challenged

14

with substantial evidence to the contrary. *See Kiddell v. Labowitz*, 284 Va. 611, 629 (Va. 2012)

("[t]he testimony of witnesses present at the time of execution is entitled to 'the greatest

consideration' on the issue of a testator's mental capacity") (quoting *Thomason v. Carlton*, 221

Va. 845, 853 (Va. 1981)). Regardless of whether the opinions and medical records of his

treating physician would have been obtained as part of any reasonable scope of discovery—were

the issue of Barringer's mental capacity litigated—the issue before the Committee was quite

different than whether a fact finder would ultimately have concluded that Barringer lacked

mental capacity to pass judgment on the Transaction. Rather, the ultimate issue before the

Committee was whether it was in the best interests of the Company to bring fiduciary breach

claims against those who approved the Transaction and Bryant who benefited from it. While

Barringer's mental competency, as well as the extent to which the other approving directors

thought he was competent, were relevant considerations in deciding that overarching issue, many

other considerations beyond how a fact finder would view Barringer's competency were also

centrally relevant. In fact, the resolution of this issue did not depend solely or even principally

on Barringer's competency, or the legal sufficiency of the process that resulted in the approval of

the Transaction, but rather on a whole range of other issues, including the effect any such

litigation would have on the Company's profitable, ongoing business operations, and the

Company's ability to retain Bryant's leadership and managerial skills. Indeed, the Committee

determined that Bryant's managerial skills were even more critical to the Company in light of

Mr. Barringer's deteriorated mental status at the time the Report was issued.

Based on the entire record, the Court must conclude that in making a determination as to

Paul B. Barringer, II's mental competency, the SLC was "adequately informed in the

circumstances, of the allegations" and acted in good faith.

15

2.   Fair market value of CFRC's shares

Ms. Luzak also argues that her derivative claims should not be dismissed based on the

SLC's decision not pursue those claims because the SLC failed to obtain expert opinions that

evaluated the fair market value of the Company's stock based on the current fair market value of

its extensive timber holdings.

The Report explicitly considered various methods for valuing the Company's stock for

the purpose of assessing the value of the Transaction. The Committee thereafter decided which

methodology to use and explained in detail its decision to use book value.[9]  In reaching that

decision, the SLC was aware of Ms. Luzak's views concerning which method of valuation was

appropriate and the value of the stock under the fair market value method Ms. Luzak proposed.

It also consulted with and was advised by tax, accounting, and other financial experts in

connection with determining how to assess the stock for the purposes of valuing the

Transaction.[10]  Based on the facts and circumstances, the Court finds as a matter of law that the

SLC conducted an objectively reasonable investigation into the the value of the stock and

reached a good faith determination as to how the stock should be valued for the purposes of

_____

[9] The SLC stated *inter alia* that "[i]t is common knowledge that the concept of book value is not the same as the concept of fair market value. This is well understood by all those involved in the Company . . . [t]he Company considered book value to be the central valuation metric for any possible transactions." [Doc. No. 439, Ex. A at 11-12]. It also reasoned that during the events at issue leading up to the Transaction, "the Company did nothing to solicit a sale of assets and engaged in very few sales of timberlands, so the price that timberlands could bring in a sale had little effect on the Company's operations" and therefore fair market value was a less reliable indicia of the true value of the relevant shares. [*Id.*].

[10] The SLC Report reflects that the Committee did in fact consider a fair market value-based approach. *See* [Doc. No. 439 Ex. A at 28] ("The board discussed the price at which the stock should be purchased. Although the board was aware of the 2013 valuation performed by [valuation advisor] Equival, the board paid more attention to the book value of the stock, which is the valuation metric that the Company had historically relied upon.").

16

assessing the value of the Transaction and whether, based on that valuation, Ms. Luzak's derivative breach of fiduciary claims should be pursued.

### 3.   Corporate approvals

The SLC also explicitly considered Ms. Luzak's claims with respect to the written consents that the Company relied upon in connection with the Transaction. The Committee found that there were substantial issues concerning those consents, but nevertheless concluded, based on a range of considerations, including evidence concerning the good faith of those who participated in the approval process, that any such issues did not warrant pursuing breach of fiduciary duty claims. Based on all the facts and circumstances, the Court finds as a matter of law that the SLC conducted an objectively reasonable investigation and based on that investigation, adequately considered Ms. Luzak's demands pertaining to the corporate approvals in determining not to pursue her derivative breach of fiduciary duty claims.

In sum, the Court finds based on the undisputed facts and as a matter of law that Ms. Luzak has failed to present facts sufficient to establish that the SLC did not "conduct[] a review and evaluation, adequately informed in the circumstances, of the allegations made in the demand or complaint."

### C.   The SLC's "good faith" requirement

Virginia Code § 13.1-672.4(A)(2) requires that the SLC's decision be made in "good faith." The Report demonstrates as a matter of law that the members of the SLC acted in "good faith" in reaching its ultimate determination that litigation of Ms. Luzak's breach of fiduciary claims was not in the best interests of the Company.

The overarching obligation of a corporate director is to "discharge his duties . . . including his duties as a member of a committee, in accordance with his good faith business

17

judgment of the best interests of the corporation." Va. Code Ann. § 13.1-690(A). "[I]n Virginia, a director's discharge of duties is not measured by what a reasonable person would do in similar circumstances or by the rationality of that ultimate decision. Instead, a director must act in accordance with his/her good faith business judgment of what is in the best interests of the corporation." *Willard ex rel. Moneta Bldg. Supply, Inc. v. Moneta Bldg. Supply, Inc.*, 258 Va. 140, 151 (Va. 1999). "Thus, a director may use an informed decision-making process in discharging the duties of the office as long as the director does so in good faith." *Id* at 152 (citing *WLR Foods, Inc. v. Tyson, Inc.*, 65 F.3d 1172, 1185 (4th Cir. 1995)). Here, the Court finds as a matter of law that Ms. Luzak has not presented evidence sufficient to establish that the SLC members did not "[d]etermine[] in good faith on the basis of that review and evaluation that the maintenance of the derivative proceeding is not in the best interests of the corporation."[11]

**D.    "Short and concise" statement in support of the SLC's decision**

The SLC has provided a 46-page Report in support of its decision not to proceed with derivative claims against the Company. *See* [Doc. No. 439. Ex. A]. In that Report, it addresses each of Luzak's claims. The Report clearly satisfies 13.1-672.4(A)(3)'s requirement that the Committee submit "a short and concise statement of the reasons for its determination."

**E.    Plaintiff's Count Nine for Declaratory Judgment**

---

[11] In support of her contentions that the Board and SLC did not act in good faith, Ms. Luzak has essentially reiterated her previous claims that the members of the SLC were not "disinterested" or "adequately informed," including that the Board (i) had already "prejudged" the merits of her derivative claim through its filing of a declaratory judgment action against her; (ii) had a financial and familial interest in the Transaction; (iii) failed to consider "a number of key issues . . . including CFRC's stock and fair market value in October 2013"; (iv) failed to consult medical professionals in consideration of Barringer's alleged lack of mental capacity Transaction; and (v) failed to rely on certain documentary evidence. *See* [Doc. No. 461 at 28-29].

Finally, Ms. Luzak contends that her Ninth Cause of Action for declaratory judgment should survive summary judgment because it is a direct claim and therefore is not subject to dismissal pursuant to Virginia's derivative claim dismissal statute, Va. Code Ann. § 13.1-672.4.[12]

As alleged, the Ninth Cause of Action is a derivative claim, subject to dismissal under Virginia Code § 13.1-672.4.[13] It is set forth in Ms. Luzak's Second Amended Verified Shareholder *Derivative* Complaint. That Complaint is explicitly and without qualification alleged to be a "shareholder *derivative* action on behalf of Coastal Forest Resources Company . . . against CFRC's CEO Travis Bryant and certain members of CFRC's board of directors . . . for breaches of fiduciary duties, violations of the the Virginia Corporate Code, unjust enrichment, declaratory reflief and rescission." *Id.* ¶ 1 (emphasis added); *see also* Plaintiff's [First] Amended Verified Shareholder Derivative Complaint [Doc. No. 180] ¶¶ 183-186. In her Second Amended Complaint, Ms. Luzak does not seek any relief with respect to her own injuries as a shareholder, but only "on behalf of CFRC."[14] Compl., Prayer for Relief ¶ A. Whatever standing Ms. Luzak

---

[12] The Court has already determined that the substance of the Ninth Cause of Action—as considered in connection with CFRC's declaratory judgment action [Doc. No. 1] and plaintiff's counterclaim [Doc. No. 7]—is derivative in nature. *See* [Doc. No. 52].

[13] The Ninth Cause of Action alleges that "the Board actions at the alleged October 24, 2013 board meeting and through (both versions of) the Written Consent did not constitute valid Board approval or the issuance of shares under Virginia law." Compl. ¶ 208. The Complaint further seeks a "judicial declaration that both versions of the Written Consent are legally invalid and/or that the shares consented to be issued thereby were not validly issued under Virginia Code § 13.1-643." *Id.* ¶ 210.

[14] More specifically, Ms. Luzak seeks the following relief:

> A. Against Mr. Bryant and in favor of CFRC awarding equitable and/or injunctive relief voiding, cancelling, and/or rescinding the illegal and wrongful Stock Sale and Option Grant, and disgorging, attaching, impounding, and imposing a constructive trust on all dividends Mr. Bryant has wrongfully received

19

may have to file direct actions based on the facts alleged, she has not alleged any such direct claims in this action.

As discussed above, it is also clear that the SLC specifically considered the substance of Ms. Luzak's Ninth Cause of Action and determined that even were the disputed consents obtained without full compliance with corporate law requirements, breach of fiduciary duty litigation against Bryant and the other Board members was not in the best interests of the Company or the shareholders for the specific reasons set forth in the Report. [Doc. No. 439, Ex. A at 36-42]. The Court finds as a matter of law that Ms. Luzak has not presented any facts sufficient to establish that this determination was not objectively reasonable, adequately

---

as a result of the Stock Sale and Option Grant, and restoring the parties to their respective positions prior to December 2013, including restoring all dividends paid to Mr. Bryant back to CFRC, with interest;

B. Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties, violations of law, waste of corporate assets and unjust enrichment, including all costs of investigation and remediation of the wrongs alleged herein, punitive and exemplary damages as appropriate, plus pre-judgment interest, modeled in a fashion to ensure Defendants do not participate therein or benefit thereby;

C. Restating the Company's audited financial statements for fiscal years 2014 and 2015 to reflect the voiding, cancellation and/or rescission of these transactions;

D. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

E. Granting such other and further relief as the Court deems just and proper.

Compl., Prayer for Relief ¶¶ A-E.

informed, and in good faith, in compliance with the requirements of Section 13.1-672.4.

Accordingly Count Nine must also be dismissed.

## IV. CONCLUSION

For the above reasons, the Court finds and concludes there is no genuine issue of material

fact concerning whether the special litigation committee complied with Virginia Code § 13.1-

672.4 and that pursuant to that section, plaintiff Hampton B. Luzak's Second Amended Verified

Shareholder Derivative Complaint must be dismissed.

An appropriate Order will issue.

The Clerk is directed to forward a copy of this Memorandum Opinion to all counsel of

record.

Alexandria, Virginia
July 8, 2016

Anthony J. Trenga
United States District Judge